UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| N.E. VERNICOS – ARGONAFTIS SALVAGE ) <br> AND TOWAGE CONSORTIUM; ARGONAFTIS ) <br> NAFTIKI ETAIRIA, ) <br>                Plaintiffs ) <br>                   v. ) <br> OCEAN TANKERS HOLDINGS PUBLIC ) <br> COMPANY LIMITED; ADMIBROS ) <br> SHIPMANAGEMENT CO. LIMITED; NAVKIOS ) <br> MARITIME CO. LTD.; ELEOUSSA MARITIME ) <br> COMPANY LIMITED; LIMI MARITIME ) <br> COMPANY LIMITED; KALIA MARITIME ) <br> COMPANY LIMITED; LISA MARITIME ) <br> COMPANY LIMITED; MARIM MARITIME ) <br> COMPANY LIMITED; BERENGARIA ) <br> MARITIME COMPANY LIMITED; PRODROMI ) <br> MARITIME COMPANY LIMITED; GREEN ) <br> FOREST MARITIME COMPANY LIMITED; ) <br> FRACHTIS MARITIME COMPANY LIMITED; ) <br> ANEFANI MARITIME COMPANY LIMITED; ) <br> HARTZI MARITIME COMPANY LIMITED; ) <br> SKLEDROS MARITIME COMPANY LIMITED ) <br> STAVRODROMI MARITIME COMPANY ) <br> LIMITED; VASI MARITIME COMPANY ) <br> LIMITED; GEMI MARITIME COMPANY ) <br> LIMITED; WALL SHIPMANAGEMENT S.A. ) <br>               Defendants ) | (ADMIRALTY) <br><br> CA 10- 441 |

## DECLARATION OF JOHN BENZONANA

I, John J. Benzonana, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I am an individual of sound mind and body, and have never been convicted of a crime of moral turpitude. This declaration is submitted in support of Plaintiffs' application for maritime attachment and garnishment of property of the Defendants in the above styled proceedings.

2. I am a citizen of Greece, and a resident of Piraeus, and the lawful representative of the Plaintiffs in the above action and duly authorized on their behalf to make this declaration which is based on my personal knowledge, documents and writings contained in the records of the Plaintiff companies; on public records in Cyprus, Malta and other countries; on information provided to me by Plaintiffs' Cypriot lawyers, and solicitors in other countries; and other information available to the public at large.

3. I am familiar with the business transactions out of which Plaintiffs' claim arises, having dealt with the said business directly. My declaration is also based on documents and information given to me by employees of the Plaintiffs and their respective attorneys.

4. I am familiar with the contents of the Original Verified Complaint to be filed in the above captioned action, and I am making this Declaration in support thereof, and declare that the contents of the said Complaint are true and correct to the best of my knowledge, information and belief.

5. Defendant OCEAN TANKERS HOLDINGS PUBLIC COMPANY LIMITED ("OCEAN TANKERS") was and is the owner and operator for profit of a fleet of tanker vessels and occasionally the operator for profit of non-owned chartered-in ships. OCEAN TANKERS owns fifteen (15) vessels actively trading. The fleet of vessels owned by OCEAN TANKERS is shown in the attached extract from this company's website, which is attached hereto as **EXHIBIT 1.**

6. OCEAN TANKERS publicly holds out the vessels it owns through one-ship-companies as its own assets, as shown in the statement from its website, which is attached hereto as **EXHIBIT 2;** the Consolidated financial statement for 2007, which is hereto attached as **EXHIBIT 3** (at p 2 thereof); and at page L1 (extracted from the June 18, 2008 prospectus of this company) of **EXHIBIT 18** of this Declaration. The net income from the operation of these vessels was received by OCEAN TANKERS, was computed as income of OCEAN TANKERS, and was accounted for in consolidated accounts of OCEAN TANKERS as income of OCEAN TANKERS. (*See* Consolidated Account for 2009 and 2008, hereto attached as **EXHIBIT 4,** with my translation in English in the margin of the relevant extract thereof). Thus, *e.g.*, the profit from the sale of the tanker GEMI is accounted for as profit to OCEAN TANKERS, even though it is an asset of another company of the group.

7. Even though each vessel in the fleet of OCEAN TANKERS is owned by a separate owning company, each such one-ship-company that belongs to the OCEAN TANKERS Group is a co-obligor on most, if not all loans, with which OCEAN TANKERS has financed the acquisition of the said vessels. In the official records of the ship's register in Cyprus, the said one ship companies are shown as having granted – each

one of them – security in favor of lending banks for amounts that far exceed the value of each respective vessel. Thus, (from the respective corporate authority records of Cyprus which are hereto attached as **EXHIBIT 5**), ELEOUSSA MARITIME COMPANY LIMITED, in the record of charges and mortgages is shown to have granted in favor of ABN Amro Bank, a charge or mortgage in the amount of $284,000,000 (*See* **EXHIBIT 5**, pages E5 translated at p. E 11) and likewise with NAVKIOS MARITIME CO. LTD. (*See* **EXHIBIT 5**, pages E16 and E 21); LIMI MARITIME COMPANY LIMITED (*See* **EXHIBIT 5**, pages E27, E34, E35); and KALIA MARITIME COMPANY LIMITED *See* **EXHIBIT 5**, pages E41 ,E42, E48, E49), to mention a few of them indicatively.

8. Based on my enquiries in the official records of the Cypriot Securities and Exchange Authority, the controlling shareholder of the Company, Michael G. Ioannides, currently holds seventy percent (70%) of the shares of OCEAN TANKERS.

9. According to records retrieved from the Cypriot authorities that regulate corporations, one hundred percent (100%) of the authorized and issued shares capital of Defendant ADMIBROS is owned by defendant Michael G. Ioannides. Copies of the respective records from the competent Cypriot regulatory authority, along with their respective translations in English, are hereto attached as **EXHIBIT 6** (at pages A4 and A9).

10. Throughout the time period that Plaintiffs transacted business (*i.e.* – provided tug services) to the vessels operated by ADMIBROS, the said company dealt with Plaintiffs as the management company of OCEAN TANKERS that carried out the operating functions of OCEAN TANKERS. ADMIBROS and OCEAN TANKERS officers acted interchangeably on behalf of both companies as if they comprised one

business entity – which they did. Indeed, in its unaudited financial report for the years 2008 and 2009, OCEAN TANKERS clearly refers to its income from the transportation of water which was accomplished by tankers chartered-in and operated by ADMIBROS, as its own income. Copies of the respective record from the competent Cypriot regulatory authority along with the respective translations in English (in the margin), is hereto attached as **EXHIBIT 4**.

11. From my examination of the records on file with the Cypriot regulatory authority, and from the information that the Defendants have posted in their respective websites, it is clear that OCEAN TANKERS and ADMIBROS have the following persons as common members of their respective boards of directors: Michael G. Ioannides; George M. Ioannides; Chrysostomos Chrysostomou; Daniel Ioannides; Antonis Ioannides; Michael Filipou; Michael Michael. The persons noted are the entire board of directors of ADMIBROS and the majority of the directors of OCEAN TANKERS. Copies of the respective records of ADMIBROS from the competent Cypriot regulatory authority for corporations are attached as part of **EXHIBIT 6**, at pages A1 and A6 thereof. Copies of the listing of officers and directors for OCEAN TANKERS and ADMIBROS from their respective websites hereto attached as **EXHIBIT 7**.

12. OCEAN TANKERS and ADMIBROS have the following corporate officers in common:

A. Michael G. Ioannides is Chief Executive Officer of OCEAN TANKERS and President of ADMIBROS;

B. George M. Ioannides is Vice President of both OCEAN TANKERS and ADMIBROS; and

C. Chrysostomos Chrysostomou, is the Financial Manager of both OCEAN TANKERS and ADMIBROS. *See* **EXHIBIT 7**.

13. As disclosed in the relevant public corporate records, OCEAN TANKERS ADMIBROS and the one-ship-company NAVKIOS MARITIME COMPANY LIMITED have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. (*See* **EXHIBIT 7** and **EXHIBIT 6**, at pages E12 and E17). They also have a common officer – George Ioannides – who is the Secretary of NAVKIOS. One hundred percent (100%) of the authorized and issued shares of NAVKIOS are owned by OCEAN TANKERS. A diagrammatic representation of the ownership structure of the defendant one-ship companies and OCEAN TANKER, extracted from the June 23, 2008 prospectus of OCEAN TANKERS, is hereto attached as **EXHIBIT 8**.

14. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS and those of the one-ship- company ELEOUSSA MARITIME COMPANY LIMITED, the three (3) companies have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of ELEOUSSA are owned by OCEAN TANKERS. (*See* **EXHIBIT 7** and **EXHIBIT 9** at pages B2, B3, B8, B9).

15. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS and the one-ship-company LIMI MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; Antonios Ioannides; George M. Ioannides, and Michael G. Ioannides. (*See* **EXHIBIT 7**, and **EXHIBIT 5**, at pages E22 and E 28) They also have a common officer –George M. Ioannides – who is the Secretary of LIMI. One hundred percent (100%) of the authorized

6

and issued shares of LIMI are owned by OCEAN TANKERS. (**EXHIBIT 5**, at pages E24, E26, E31, E32, and **EXHIBIT 8**).

16. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the one-ship-company KALIA MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. (*See* **EXHIBIT 7** and **EXHIBIT 5**, at pages E36, E43). One hundred percent (100%) of the authorized and issued shares of KALIA are owned by OCEAN TANKERS. (*See* **EXHIBIT 5** at pages E38, E39, E45, E46, and **EXHIBIT 8**).

17. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the one-ship-company LISA MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of LISA are owned by OCEAN TANKERS. (*See* **EXHIBIT 7** and copies of the respective records from the competent Cypriot regulatory authority regarding LISA, along with their respective translations in English, hereto attached as **EXHIBIT 10**, at pages C1, C3, C4, C8, C10, C11, and also **EXHIBIT 8**).

18. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the one-ship-company MARIM MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of MARIM are owned by OCEAN TANKERS. (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority

regarding MARIM along with their respective translations in English, hereto attached as **EXHIBIT 11**, at pages D1, D3, D4, D6, D8, D9, and **EXHIBIT 8).**

19.   As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and BERENGARIA MARITIME COMPANY LIMITED, the three (3) companies have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of BERENGARIA are purportedly held by a Cypriot lawyer – Antonis Karitzis – who, on information and belief, is a nominee shareholder. (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority regarding BERENGARIA, along with their respective translations in English, hereto attached as **EXHIBIT 12** at pages F1, F3, F4, F5, F7, F8, and **EXHIBIT 8).**

20.   As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the Cypriot Company PRODROMI MARITIME COMPANY LIMITED, the three (3) companies have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of PRODROMI are held by a Cypriot lawyer – Antonis Karitzis – who, on information and belief, is a nominee shareholder. (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority regarding PRODROMI, along with their respective translations in English, hereto attached as **EXHIBIT 13** at pages G1, G3, G4, G5, G7, G8, and **EXHIBIT 8).**

21.   As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the Maltese Company ANEFANI MARITIME COMPANY LIMITED, the three (3) companies have the following directors in common:

Daniel Ioannides; George M. Ioannides; and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of ANEFANI are held by OCEAN TANKERS. (*See* **EXHIBIT 7**, and copies of the respective investigation record from the competent Maltese regulatory authority regarding ANEFANI, hereto attached as **EXHIBIT 14**).

22. As disclosed by the relevant public corporate records, OCEAN TANKERS, ADMIBROS, and the one-ship-company VASI MARITIME COMPANY LIMITED, the three (3) companies have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of VASI are owned by OCEAN TANKERS. (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority regarding VASI, along with their respective translations in English, are hereto attached as **EXHIBIT 15**, at pages I1, I3, I4, I6, I8, I9, and **EXHIBIT 8**).

23. As disclosed by the relevant corporate records, OCEAN TANKERS, ADMIBROS, and the Cypriot Company GREEN FOREST MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; George M. Ioannides, and Michael G. Ioannides. One hundred percent (100%) of the authorized and issued shares of GREEN FOREST are held by a Cypriot lawyer – Antonis Karitzis – who, on information and belief, is a nominee shareholder. (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority regarding GREEN FOREST, along with their respective translations in English, hereto attached as **EXHIBIT 16** at pages J1, J3, J4, J5, J7, J8, and **EXHIBIT 8**).

24. As disclosed by the relevant corporate records, OCEAN TANKERS, ADMIBROS, and the Cypriot Company FRACHTIS MARITIME COMPANY LIMITED, have the following directors in common: Daniel Ioannides; George Ioannides, and Michael Ioannides. One hundred percent (100%) of the authorized and issued shares of FRACHTIS MARITIME are held by a Cypriot lawyer – Antonis Karitzis – who, on information and belief, is a nominee shareholder, (*See* **EXHIBIT 7**, and copies of the respective records from the competent Cypriot regulatory authority regarding FRACHTIS MARITIME, along with their respective translations in English, are hereto attached as **EXHIBIT 17** at pages K1, K2, K3, K5, K7, K8, and **EXHIBIT 8**).

25. As disclosed by Plaintiff's enquiries, OCEAN TANKERS holds out Defendant STAVRODROMI MARITIME COMPANY LIMITED to be a Maltese company, a member of the group of companies that comprise the OCEAN TANKERS group, and the owner of the motor tanker vessel STAVRODROMI. (*See* extract from June 13, 2008 prospectus of OCEAN TANKERS, hereto attached as p.L1 of **EXHIBIT 18**.) Defendant OCEAN TANKERS also holds out the M/T STAVRODROMI as owned by Defendants WALL SHIPMANAGEMENT S.A., a Marshall Islands registered company (*See* extract from OCEAN TANKERS annual report for the year ending December 2008, hereto attached as p.L2 of **EXHIBIT 18**, and the translation in English of the relevant portion at p L3). At the same time, OCEAN TANKERS also represents that the owner of the M/T STAVRODROMI is STAVRODROMI MARITIME COMPANY LIMITED (*See* extract from OCEAN TANKERS annual report for the year ending December 2008, hereto attached as p. L4 **of EXHIBIT 18**, and the translation in English of the relevant portion at p. L5). In either event, whether the formal/nominal

10

ownership of the M/T STAVRODROMI is in WALL SHIPMANAGENT S.A. or in STAVRODROMI MARITIME COMPANY LIMITED, both of these companies are wholly owned subsidiaries of Defendant OCEAN TANKERS, (*See* **EXHBIT 18**, pp. L6–L10 extracted from Lloyd's Sea-Web, and EXHIBIT 8), which is the actual owner of this vessel.

26. According to the report regarding the STAVRODROMI contained on the EQUASIS data base, the registered owner of this vessel is WALL SHIPMANAGEMENT S.A. and defendant ADMIBROS is its manager. Both of these companies have the same business address – *i.e.* Blue Anchor House, 4R, Parou Street, 1082 Nicosia, Cyprus (*See* **EXHIBIT 19**), which is also the business address of Defendant OCEAN TANKERS.

27. In all business transacted with the Defendants OCEAN TANKERS and ADMIBROS, the said Defendants had and listed the same business address – *i.e.* Kyriacou Matsi 16 and Parou 4 streets, Nicosia, Cyprus.

28. OCEAN TANKERS has dealt with the assets of the one-ship-companies that form the OCEAN TANKERS group as if they were its own assets. For example, in its annual balance sheet for 2009, it has credited to itself the income from the sale of the M/T GEMI, a vessel which was owned by a separate company that was a member of the OCEAN TANKERS Group. Likewise, OCEAN TANKERS, in its annual balance sheet, has credited itself with the income and shows as an expense the expenses of the non-owned vessels that were chartered-in through ADMIBROS to perform the shipping of water under the contract with the Cypriot government (set forth more fully below). *See* **EXHIBIT 4.**

29. On or about April 2008, Defendant OCEAN TANKERS entered into a contract with the Republic of Cyprus for the transportation by means of tanker vessels of some 8 million tons of fresh water that was necessary to cover the needs of Cyprus, which was undergoing a severe drought.

30. To perform its contract, OCEAN TANKERS commissioned Defendant ADMIBROS, which Michael G. Ioannides entirely controls, to charter-in, in its own name, but for the benefit of OCEAN TANKERS, non-owned tonnage that would be used to perform the fresh water transportation contract that OCEAN TANKERS had with the government of Cyprus.

31. Plaintiffs were the operators of tugs which serviced the loading terminals at the Elefsina coastal area of Greece, where the chartered-in non-owned tanker fleet operated by ADMIBROS, on behalf and for the benefit of OCEAN TANKERS, loaded fresh water for transportation to Cyprus.

32. In connection with the loading of the non-owned tankers employed by ADMIBROS, on behalf and for the benefit of OCEAN TANKERS, Plaintiffs provided tug services for docking, undocking, and towage in and around the vicinity of the aforementioned loading terminals in Greece, and on each occasion, timely rendered their duly acknowledged invoices for payment issued to ADMIBROS. Sample copies of the said invoices are attached to my Declaration as **EXHIBIT 20.** The full set of the said invoices for each tanker vessel is available and at the disposal of the Court and for the Defendants to examine.

33. During the course of the performance of the contract to transport fresh water to Cyprus, Defendants ADMIBROS and OCEAN TANKERS fell substantially in arrears in the amounts due to Plaintiffs for services and, as a result, by April 2009 the following amounts were outstanding: Euro 209, 223.00 owed to Plaintiff CONSORTIUM; and Euro 471,792.66 owed to Plaintiff ARGONAFTIS. Plaintiffs, accordingly, advised Defendants that they were unwilling to provide further tug services.

34. On or about April 1, 2010, the common Director of Defendants OCEAN TANKERS and ADMIBROS, George M. Ioannides, called the offices of Plaintiffs' Cypriot lawyer in Nicosia, on behalf of Defendants OCEAN TANKERS. In order to induce Plaintiffs to continue providing tug services at the loading terminal facilities in Greece, George M. Ioannides tendered on behalf of OCEAN TANKERS, as guarantor of the outstanding obligations of ADMIBROS for the tug services that had been provided by the Plaintiffs, five (5) post-dated checks of OCEAN TANKERS as follows:

Dated Apr. 10, 2009 for EUR 271,792.66 payable to the order of ARGONAFTIS;

Dated May 15, 2009 for EUR 100,000 payable to the order of ARGONAFTIS;

Dated May 31, 2009, for EUR 100,000 payable to the order of ARGONAFTIS;

Dated Apr. 25, 2009 for EUR 109,223 payable to the order of CONSORTIUM; and

Dated Apr. 30, 2009 for EUR 100,000 payable to the order of CONSORTIUM.

Copies of the said checks are attached hereto as part of **EXHIBIT 21**, at pages M8 and M9 thereof.

35. The five (5) checks noted in the preceding paragraph were delivered by George M. Ioannides, together with a letter on the letterhead of OCEAN TANKERS,

addressed to Plaintiffs and signed by the said George M. Ioannides in his capacity as Vice–President and Secretary of OCEAN TANKERS, under the corporate stamp of the said company, confirmed that OCEAN TANKERS guaranteed the performance of the obligations of its subsidiary ADMIBROS for the outstanding amounts. A copy of the said letter, together with its translation in English, is hereto attached as part of **EXHIBIT 21,** at pages M10 and M11.

36. All five (5) of the above checks were dishonored by the Bank of Cyprus, the payor bank, when they were presented for payment, however, Defendant OCEAN TANKERS did eventually pay Plaintiff ARGONAFTIS EUR 271,792.66 by money transfer for this amount.

37. In order to avert legal action by Plaintiffs for the breach of its guarantee and for further and additional charges for tug services that had been provided and were remaining unpaid, Defendant OCEAN TANKERS delivered to Plaintiffs on June 5, 2009 post-dated checks, as a form of guarantee, for the outstanding indebtedness to Plaintiffs for tug services rendered as follows:

Dated Aug. 31, 2009 for EUR 100,000 payable to the order of ARGONAFTIS;

Dated Aug 31, 2009 for EUR 100,000 payable to the order of ARGONAFTIS;

Dated Aug 31, 2009, for EUR 100,000 payable to the order of CONSORTIUM;

Additionally, Defendant OCEAN TANKERS further delivered to Plaintiffs on June 23, 2009 the following post-dated checks as a form of guarantee for the outstanding indebtedness to Plaintiffs for tug services rendered as follows:

Dated Sept. 10, 2009 for EUR 125,880.21 payable to the order of ARGONAFTIS;

Dated Sept 10, 2009, for EUR 10,144.68 payable to the order of CONSORTIUM; Copies of the said checks are hereto attached as part of **EXHIBIT 21** at pp. M3, M4, M5, M6, M7.

38. In the respective cover letters that accompanied the above mentioned checks, Defendant OCEAN TANKERS by and through its Vice President and Secretary George M. Ioannides confirmed to Plaintiffs that OCEAN TANKERS were obligated to Plaintiffs as guarantors of ADMIBROS. Copies of the said letters with respective translations are hereto attached as part of **EXHIBIT 21** (at pp M1, M1a, M2, M2a).

39. None of the checks of Defendant OCEAN TANKERS – noted in paragraph 37, (**EXHIBIT 21**) in the foregoing – cleared when presented. OCEAN TANKERS stopped payment.

40. Defendants OCEAN TANKERS and ADMIBROS are indebted to Plaintiff ARGONAFTIS for the sum of EURO 325,880.21 and to Plaintiff CONSORTIUM for the sum of EURO 110,144.68, which they have failed and refused to pay, though it has been duly demanded.

41. The towage terms and conditions for the services rendered by Plaintiffs to Defendants' non-owned vessels include the following provision regarding resolution of disputes:

> "9. (8) The agreement between the Tugowner and the Hirer is and shall be governed by English Law and the Tugowner and the Hirer hereby Accept subject to the proviso contained in subclause (b) hereof the exclusive jurisdiction of the English Courts.
>
> (b) No suit shall be brought in any jurisdiction other than that provided in Subclause (a) hereof save that either the Tugowner or the hirer shall Have the option to bring proceedings in rem to obtain the arrest or other Similar remedy against any vessel or property owned by the other

>Party hereto in any jurisdiction where such vessel or property may be found.
>
>(c) It is further specifically agreed that this contract and any dispute arising hereunder, or in connection with the requested services shall be subject to London Arbitration"

A copy of the towage terms and conditions is contained in **EXHIBIT 20**.

43. Plaintiffs intend to commence London maritime arbitration against Defendant ADMIBROS to recover the respective unpaid balances of EURO 325,880.21 and EURO 110,144.68 that the said Defendant owes for towage services rendered, which are maritime claims.

44. Plaintiffs have also commenced proceedings in Cyprus against Defendant OCEAN TANKERS, to enforce the guarantees and to recover damages arising from the breach thereof, and failure to pay Plaintiffs respectively the sums of EURO 325,880.21 and EURO 110,144.68.

45. Defendant OCEAN TANKERS, even though it unequivocally guaranteed the outstanding obligations of its wholly owned subsidiary ADMIBROS, is abusing its separate corporate status, asserting that it received no benefit from the services rendered – nominally – to its subsidiary, but actually to itself since its own annual balance sheet shows the income and loss from the specific business as entries in its own accounts (see **EXHIBIT 4**). Moreover, and by its own public statement in its supplementary prospectus dated August 4, 2008, OCEAN TANKERS admitted its status as the contractor of the Cypriot government for the transportation of the fresh water from

Greece to Cyprus, an in every respect the beneficiary of this contract ( See extract from the supplementary prospectus of OCEAN TANKERS dated August 4, 2008 and translation in English hereto attached **as EXHIBIT 22.**)

Under the penalties of perjury under the laws of the United States I declare that the contents of the above and foregoing declaration are true and correct.

Signed in Piraeus, Greece this 25th day of Oct 2010

John J. Benzonana

17