## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| N.E. VERNICOS – ARGONAFTIS SALVAGE AND TOWAGE CONSORTIUM; ARGONAFTIS NAFTIKI ETAIRIA,<br>　　　　　　　　　Plaintiffs<br>　　　　v.<br>OCEAN TANKERS HOLDINGS PUBLIC COMPANY LIMITED; ADMIBROS SHIPMANAGEMENT CO. LIMITED; NAVKIOS MARITIME CO. LTD.; ELEOUSSA MARITIME COMPANY LIMITED; LIMI MARITIME COMPANY LIMITED; KALIA MARITIME COMPANY LIMITED; LISA MARITIME COMPANY LIMITED; MARIM MARITIME COMPANY LIMITED; BERENGARIA MARITIME COMPANY LIMITED; PRODROMI MARITIME COMPANY LIMITED; GREEN FOREST MARITIME COMPANY LIMITED; FRACHTIS MARITIME COMPANY LIMITED; ANEFANI MARITIME COMPANY LIMITED; HARTZI MARITIME COMPANY LIMITED; SKLEDROS MARITIME COMPANY LIMITED STAVRODROMI MARITIME COMPANY LIMITED; VASI MARITIME COMPANY LIMITED; GEMI MARITIME COMPANY LIMITED; WALL SHIPMANAGEMENT S.A.<br>　　　　　　　　　Defendants | (ADMIRALTY)<br><br>_10-441_ |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

COME NOW Plaintiffs, N.E. VERNICOS – ARGONAFTIS SALVAGE AND

TOWAGE CONSORTIUM (hereinafter also "CONSORTIUM), and ARGONAFTIS

NAFTIKI ETAIRIA (hereinafter also "ARGONAFTIS") and submit this Memorandum

of Law in Support of their Motion for Issuance of Process of Maritime Attachment and Garnishment.

I. INTRODUCTION

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Admiralty Rule(s)") provides for maritime attachments and garnishments and codifies traditional maritime attachment practices. *See* Robert M. Jarvis, An Introduction to Maritime Attachment Under Rule B, 20 J.Mar.L. & Com. 521, 522 (1989). The purpose of the procedures outlined in Admiralty Rule B "is twofold: to secure the defendant's appearance and to satisfy the claim of an injured plaintiff." T. Schoenbaum, Admiralty and Maritime Law § 21-2 (4th ed. 2004).

It is well established that Admiralty Rule B "allows an admiralty plaintiff to acquire *quasi in rem* jurisdiction over a defendant by attaching his property [*i.e.* – a vessel or cargo] in the district," where the defendant is not "found within the district.'" *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 309 (1st Cir. 1997); *see also Samho Co., Ltd. v. Sorks-Iturup*, 254 Fed. Appx. 569, 571 (9th Cir. Wash. 2007)("In a *quasi in rem* action…the dispositive rule is that 'the court derives its jurisdiction over the defendant solely from its authority over the attached property or its substitute security.'") The validity of an Admiralty Rule B attachment is therefore dependent on the "determination that the *res* at issue is the property of the defendant at the moment the *res* is attached." *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. N.Y. 2009)(*citing Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 108 (2d Cir. 2009)). In general, there are three reasons for the attachment of property: (1) to acquire jurisdiction over the defendant; (2) to obtain

security for a claim; and (3) to seize property in connection with the enforcement of a judgment. T. Schoenbaum, Admiralty and Maritime Law § 21-2 (4th ed. 2004).

A summons and process of maritime attachment may be properly granted through judicial authorization. Admiralty Rule B. A summons and process of maritime attachment may also be granted by the clerk, if the plaintiff or plaintiff's attorney certifies that "exigent circumstances make court review impracticable." Admiralty Rule B(1)(c).

II. AN ADMIRALTY RULE B ATTACHMENT IS PROPER IN THIS CASE AS THE PLAINTIFFS HAVE A PRIMA FACIE ADMIRALTY CLAIM AGAINST DEFENDANTS WHO CANNOT BE FOUND WITHIN THIS DISTRICT BUT WHO HAVE PROPERTY THAT IS OR WILL BE FOUND WITHIN THIS DISTRICT

In order to be granted an Admiralty Rule B maritime attachment, a plaintiff must show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

    A. PLAINTIFFS HAVE ESTABLISHED A PRIMA FACIE ADMIRALTY CLAIM AGAINST THE DEFENDANTS BECAUSE THEY HAVE FILED A VERIFIED COMPLAINT ALLEGING BREACHES OF MARITIME CONTRACTS AGAINST ALTER-EGO DEFENDANTS.

        1. The Plaintiffs filing of a Verified Complaint and Affidavit that the Defendants are not found within the district established their *prima facie* admiralty claim.

Here, Plaintiffs have satisfied all four of the *Aqua Stoli* considerations. First, Plaintiffs have established a *prima facie* admiralty claim for breach of maritime contracts against the Defendants as they have filed a Verified Complaint and affidavit stating that the Defendants are not found within the district. The Second Circuit has held that in order to demonstrate that "it has a valid prima facie admiralty claim against the

defendant...a plaintiff need not provide anything beyond its Verified Complaint," pursuant to Supplemental Rules B and E. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870, *16 (S.D.N.Y. 2006)(*citing Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 439 (2d Cir. 2006)). Accordingly, the plaintiff seeking a Rule B attachment need only provide its complaint and affidavit indicating that defendants are not found in the district – supporting evidence is not required. *Id.* For this reason, the Southern District of New York Court has stated that "the use of the phrase 'prima facie claim,' in the maritime context, differs from the use of that phrase in other contexts, where it implies an evidentiary standard." *Id.*

> 2. The Plaintiffs have made a *prima facie* admiralty claim as they have alleged breaches of towage contracts which are maritime contracts

It is also important to note that the Plaintiffs have alleged an admiralty claim because they have alleged breaches of contracts for towage services and guarantees to pay the amounts owed under the said contracts for towage services. It is well settled that towage contracts are maritime contracts that give rise to admiralty claims. *Mack S. S. Co. v. Thompson*, 176 F. 499, 501 (6th Cir. 1910) ("a towage contract is a maritime contract"); *See, e.g. United States ex rel. E. Gulf v. Metzger Towing*, 910 F.2d 775, 779 (11th Cir. 1990); *See generally*, G. Gilmore & C. Black, The Law of Admiralty § 1-10 (2d ed. 1975).

> 3. The Plaintiffs have made a *prima facie* admiralty claim against Defendants because they have made a prima facie showing of alter ego liability.

The Plaintiffs have also properly alleged admiralty claims against all Defendants as they have adequately claimed the alter-ego liability of all Defendants. Allegations of

alter ego liability address the final requirement of Rule B maritime attachments – that the plaintiff show it has a legitimate *prima facie* admiralty claim against the defendant." *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009) (citing *Brave Bulk Transp. v. Spot On Shipping Ltd.*, 2007 U.S. Dist. LEXIS 81137 at * 3 (S.D.N.Y. 2007)). "[A] plaintiff need only make a prima facie showing of alter ego liability to avoid vacatur of a Rule B attachment." *Budisukma Permai SDN BHD v. N.M.K. Products & Agencies Lanka (Private) Limited*, 606 F. Supp. 2d 391, 396 (S.D.N.Y. 2009)(where the court determined that Plaintiff "satisfied the prima facie standard of alleging alter ego liability," and denied Defendants' motion to vacate the Rule B attachment); *see also Glory Wealth Shipping PTE, Ltd. v. Indus. Carriers, Inc.*, 590 F. Supp. 2d 562 (S.D.N.Y. 2008)(where the Court held that "where one defendant is subject to personal jurisdiction and service of process, its alter egos are subject to personal jurisdiction …the corollary to this rule is that is one defendant is present in the district for the purposes of issuing a maritime attachment, its alter-egos are present as well.")

The Plaintiffs have made a *prima facie* showing of alter ego liability as their Verified Complaint demonstrates and makes a valid claim that the corporate veil should be pierced. When considering whether to pierce a corporate veil based on allegations of alter ego liability, courts may consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Arctic Ocean Int'l, Ltd.* 622 F. Supp. 2d. at 53-54 (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)). The corporate veil will be pierced where a corporation was so used by another entity that is was "'so dominated' and its corporate form 'disregarded' such that it primarily transacted the other entity's or individual's business." *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006) (*citing Kirno Hill Corp.*, 618 F.2d 982, 985 (2d Cir. 1980)).

Here, Plaintiffs have submitted extensive evidence in support of their allegation that the Defendants are alter egos who have completely disregard the corporate form. As alleged in the Verified Complaint, and supported by the Declaration of John J. Benzonana and attached exhibits, Defendant, OCEAN TANKERS HOLDINGS PUBLIC COMPANY LIMITED (hereinafter "OCEAN TANKERS"), so disregarded the corporate form and transacted the other Defendants business through the following actions:

- ***FRAUD***

(1) To induce Plaintiffs to continue providing tug services to its affiliate Defendant ADMIBROS SHIPMANAGEMENT CO. LIMITED (hereinafter "ADMIBROS"), and refrain from legal action for collection of outstanding invoices, OCEAN TANKERS guaranteed payment and gave Plaintiff its checks in the amount then outstanding i.e. - EUR 436, 024.89 (USD 610,434.84). Next, OCEAN TANKERS stopped payment of the checks and rebuffed Plaintiffs' demand to perform its guarantee. OCEAN TANKERS asserted ADMIBROS alone benefited from Plaintiffs' services, and as a separate company, it did not receive consideration supporting an obligation to perform either as guarantor or as principal. OCEAN TANKERS thus used the corporate status of itself and its affiliate to commit fraud. *See Benzonana Declaration* at

paragraphs 33-40 and 45, and note that on such grounds alone the corporate veil may be pierced. *Dolco Inv., Ltd. v. Moonriver Development, Ltd.*, 486 F.Supp.2d 261, 271 (S.D.N.Y., 2007); *Arctic Ocean Intern. v. High Seas Shipping Ltd.*, 622 F.Supp.2d 46, 53 (S.D.N.Y., 2009); *Ullises Shipping Corp. v. Fal Shipping Co. Ltd.*, 415 F.Supp.2d 318, 323 (S.D.N.Y., 2006);

- ***DISREGARDING CORPORATE FORMALITIES***

(2) OCEAN TANKERS disregarded corporate formalities by using its affiliate ADMIBROS, which it dominated, as a surrogate to perform its water transportation contracts with the government of Cyprus, reaping the profits and leaving ADMIBROS with the liabilities. *See Benzonana Declaration*, at paragraphs 33-40 and 45;

- ***UNDERCAPITALIZATION***

(3) ADMIBROS was kept undercapitalized and was not allowed to make a profit – *e.g.* in the water transportation contracts, ADMIBROS received a paltry 1.25% commission off the charter hires, yet it took on the full burden of paying for the tug service. *See Benzonana Declaration*, paragraph 45, and EXHIBIT 22;

- ***INTERMINGLING OF FUNDS AND ASSETS***

(4) OCEAN TANKERS intermingled its funds with the funds of its wholly owned subsidiaries, taking their profit as its own (*See Benzonana Declaration*, paragraph 6 and EXHIBIT 6). In addition, the subsidiaries of OCEAN TANKERS were not allowed to have an economic life of their own, and the profits of the one ship companies go in the pockets of OCEAN TANKERS, as plainly reflected in EXHIBIT 4 of the Benzonana Declaration. Performance guarantees in favor of the affiliates were given by OCEAN TANKERS, as noted in the foregoing. The property of the defendant one-ship-

companies was commingled and lumped together as collateral security fort loans extended by lenders to OCEAN TANKERS. *See Benzonana Declaration* at paragraph 7.

### - *OVERLAPPING OF OFFICERS AND DIRECTORS*

(5) OCEAN TANKERS and its group of subsidiaries had overlapping officers and directors. See *e.g.* at *Benzonana Declaration,* paragraph 11 ;

### - *COMMON OWNERSHIP*

(6) OCEAN TANKERS and its affiliates and subsidiaries had common ownership: seventy percent (70%) of OCEAN TANKERS is owned by Michael Ioannides, and one hundred percent (100%) of *ADMIBROS* is also owned by him. *See Benzonana Declaration* at paragraphs 8 and 9;

### - *COMMON SHAREHOLDERS*

(6) Ocean Tankers owns one hundred percent (100%)of the shares of its subsidiaries. *See* Exhibit 8 of Benzonana Declaration;

### - *COMMON BUSINESS PREMISES*

(7) The Ocean Tankers Group occupies common business premises. *See generally Benzonana Declaration* paragraphs 26 and 27, and exhibits 5 at pages E9; E15; E15; 6 at pages A1; A4; A6; A9; etc; paragraph 26;

### - *ABSENCE OF ARMS LENGTH DEALINGS*

(8) Transactions and dealings between OCEAN TANKERS and its affiliates' subsidiaries were not at arm's length. As noted in paragraph 7 of Mr. Benzonana's Declaration, loans were cross-collateralized with mortgages on virtually every vessel of the Group and the profits from the operations were reaped by Ocean Tankers.

B. PLAINTIFFS HAVE DEMONSTRATED THAT THE DEFENDANTS ARE NOT PRESENT WITHIN THE DISTRICT, THAT THE VESSEL IS OR WILL BE IN THE NAVIGABLE WATERS OF THIS DISTRICT AND THAT NO STATUTE OR MARITIME LAW RULE BARS THE ATTACHMENT.

With respect to the second *Aqua Stoli* consideration, as demonstrated by the Declaration of George A. Gaitas, none of the Defendants are located in this district as they are not jurisdictionally present and are not present for service of process. *See LaBanca v. Ostermunchner*, 664 F.2d 65 (5th Cir. 1981); *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963); *West of England Ship Owners Mut. Ins. Assn. v. McAllister Bros.*, 829 F.Supp. 122 (E.D.Pa. 1993) (holding that it is sufficient if a plaintiff makes a bona fide effort to find the defendant within the district). With respect to the third *Aqua Stoli* consideration, the Plaintiffs have reliable information demonstrating that the M/T STAVRODROMI is or will shortly be in the navigable waters of this district- the Port of Providence. With respect to the fourth *Aqua Stoli* consideration, there is no statutory or maritime law bar to the attachment.

III. THE COURT SHOULD PROPERLY ORDER THE ISSUANCE OF THE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AS THERE ARE REASONABLE GROUNDS FOR SAME

In determining whether an Admiralty Rule B maritime attachment is proper at a Admiralty Rule E(4)(f) post attachment hearing, a court is considered to have properly granted an attachment if it had **reasonable grounds** for the issuance of the ex parte order for the process of maritime attachment and garnishment. *Salazar v. The ATLANTIC SUN*, 881 F.2d. 73, 79-80 (3d Cir. 1989); *Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356 (RCC), 2006 WL 2168452, at *10 (S.D.N.Y. Aug 1, 2006); *Ullises Shipping Corp. v. Fal Shipping Co.*, 415 F. Supp. 2d 318, 326 (S.D.N.Y. 2006); *Thypin Steel Co. v. Certain*

*Bills of Lading Issued for a Cargo*, No. 96 Civ. 266 (RPP), 1996 WL 223896, at *4 (S.D.N.Y.), *aff'd*, 215 F.3d 273 (2d Cir. 2000). Courts frequently characterize the "reasonable grounds" burden as a requirement that the plaintiff make a *prima facie* showing that it is entitled to the damages sought and secured by the arrest and attachment. *See, e.g., Parkroad Corp. v. China Worldwide Shipping Co.*, No. 05 Civ. 5085 (GBD), 2005 U.S. Dist LEXIS 11122, at *3 (S.D.N.Y. June 6, 2005); *see also Blake Maritime, Inc. v. Petrom S.A.*, No. 05 Civ. 8033 (PAC), 2005 U.S. Dist LEXIS 26310, at *12 (S.D.N.Y. Oct. 31, 2005); *M/V NARA*, 1999 U.S. Dist. LEXIS 22375, at *5 (E.D. La. 1999); *Caspar Marine, Inc. v. Seatrans Shipping Corp.*, 969 F. Supp. 395, 396 (E.D. La. 1997). Based upon the above demonstration of Plaintiffs' satisfaction of the *Aqua Stoli* factors, there are surely reasonable grounds to order the issuance of maritime attachment and garnishment.

**WHEREFORE**, Plaintiffs, N.E. VERNICOS – ARGONAFTIS SALVAGE AND TOWAGE CONSORTIUM and ARGONAFTIS NAFTIKI ETAIRIA, respectfully request that this Court enter an Order authorizing the issuance of Process of Maritime Attachment and Garnishment, directing the United States Marshal for District of Rhode Island to attach the M/T STAVRODROMI, and to garnish any tangible or intangible personal property in the possession, custody or control of the Master of the M/T STAVRODROMI belonging to Defendants, and to grant Plaintiffs such other and further relief as may be just, equitable and proper.

DATED this 29th day of October, 2010.

                                              N.E. VERNICOS – ARGONAFTIS
SALVAGE AND TOWAGE
CONSORTIUM and ARGONAFTIS
NAFTIKI ETAIRIA,

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

_/s/ Howard A. Merten_
Howard A. Merten (#3171)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
hm@psh.com

*Of counsel*:

George A. Gaitas
Texas State Bar No.24058885
Federal Bar No.705176
Chalos & Co.
675 Bering Dr., Ste. 275
Houston, Texas 77057
Telephone: 713-936-2427
Facsimile: 713-782-5274
*Attorney for Plaintiffs*